FILED

2010 APR 16 AM 11: 32

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

ORIGINAL

1  RENE CARRANZA

2  305 S. REXFORD ST.

3  RIALTO, CALIFORNIA 92376

4  Telephone: (909) 644-7321

5  Email: renesapito@yahoo.com

6  PLAINTIFF in Pro Per

7

8

9                    **United States District Court**

10                  **Central District of California**

11

12  RENE CARRANZA, an individual,      )   Case No.: 09-CV-03604-GW (CWX)

13  and dba LOS MOJADOS DEL            )   **THIRD AMENDED COMPLAINT**

14  NORTE and EL SAPITO RECORDS,  )

15          Plaintiff,                         )   **1. Direct Copyright Infringement**

16          vs.                                )         **2. Contributory Copyright**

17  UNIVERSAL MUSIC GROUP,                      **Infringement**

18  INC., a Delaware Corporation,          **3. Vicarious Copyright Infringement**

19  UNIVERSAL MUSIC

20  DISTRIBUTION, a California

21  Corporation, WAL-MART STORES

22  INC., a Delaware Corporation,

23  UNIVISION.COM, a business entity

24  unknown; and DOES 1 THROUGH

25  50, INCLUSIVE,

26          Defendant(s).

27        Plaintiffs, Rene Carranza dba Los Mojados Del Norte and El sapito Records

28  (or "Plaintiff"), alleges:

1

# JURISDICTIONAL ALLEGATIONS

1. Plaintiff, Rene Carranza is an individual who at all relevant times resided in the City of Rialto, County of San Bernardino, State of California.

2. Plaintiff at all relevant times is and was the owner of El Sapito Records. Plaintiff is the owner of the copyright in the album entitled "Tumbando Muros" and has acquired Trademark protection in the mark "Los Mojados Del Norte."

3. At all relevant times, Plaintiff created and produced the sound recordings collectively titled "Tumbando Muros" by "Los Mojados Del Norte".

4. Plaintiff at all relevant times did business under the fictitious business name of Los Mojados Del Norte and El Sapito Records. The Fictitious business filing was recorded in the County of Los Angeles, State of California.

5. At all relevant times, Plaintiff has used the service mark "Los Mojados Del Norte" in commerce to distinguish and identify the entertainment services provided by Plaintiff's band known as "Los Mojados Del Norte".

6. Defendant Universal Music Group, Inc. ("Universal Music") is a Delaware Corporation qualified to do business in the State of California. At all relevant times, Universal Music's headquarters were located in Universal City, County of Los Angeles, State of California.

7. Defendant Universal Music Distribution ("Universal Distribution") is a California Corporation and is the sales, marketing distribution division of Defendant Universal Music. At all relevant times, Universal Distribution conducted its operations and transacts business at the headquarters of Universal Music, in Universal City, County of Los Angeles, State of California.

8. Defendant Wal-Mart Stores, Inc. is a Delaware corporationwhich owns and operates the internet website located at walmart.com, and also owns and operates multiple Wal-Mart stores throughout the country.

9.        Defendant Univision.com is a business entity unknown which owns and operates the internet website located at univision.com

10.       Defendants unlawfully used, manufactured, distributed, or displayed Plaintiff's musical compact disc and other copyrighted material for profit without Plaintiff's knowledge or consent. Said unlawful actions as committed by Defendants, and each of them, occurred in the County of Los Angeles, State of California.

11.       At all times mentioned, Defendants, and each of them, were the agents, principals, servants, or employees of each of the remaining Defendants, and was at all times acting within the purpose and /or scope of such agency, service and /or employment. Each Defendant has consented, ratified, permitted, encouraged, directed, and/or approved the acts of each other Defendants.

12.       This Court has jurisdiction under 28 U.S.C. §1338 (a) because this action arises under the Copyright Act of 1976, 17 U.S.C. §101et seq. Venue is proper in this district under 28 U.S.C. §§ 1400 (a) and 1391 (b) and © because the Defendants are subject to personal jurisdiction in this district and therefore resides here for venue purposes.

13.       Plaintiff is a musician and a music producer. In or about 2005, Plaintiff filed a fictitious business name statement with the County of Los Angeles under the names El Sapito Records and Los Mojados Del Norte.

14.       In December 2007, Plaintiff also copyrighted the fictitious business names El Sapito Records and Los Mojados Del Norte with the Library of Congress Copyright Office in Washington, D.C.

## FACTUAL ALLEGATIONS

15.       In June 2006, Plaintiff contacted a representative from Universal Music regarding the mass production of his compact musical disc ("CD") called

3

1   Tumbando Muros which he had produced and copied on his own for his band Los

2   Mojados Del Norte under license of El Sapito Records.

3   16.          The representative from Defendant Universal Music referred Plaintiff

4   to Defendant Lideres located in Coral Gables, Florida. The representative

5   explained that Defendant Lideres was a music company with "strong ties within

6   the Universal Music Group".

7   17.          Based upon the recommendation and representation of the

8   representative and/or employee Gumercindo Miranda ("Miranda"). Plaintiff told

9   Miranda about his band Los Mojados Del Norte and their music CD. Miranda was

10  very excited about Plaintiffs music and asked him to send a sample CD for his

11  review. Miranda further stated that if he "liked Plaintiffs music, he would offer him

12  a two year contract at $200,000" and possibly a "four year contract".

13  18.          Immediately upon speaking to Miranda, Plaintiff sent him his master

14  Cd, master audios, video clips and other proprietary, copyrighted materials of Los

15  Mojados Del Norte "Tumbando Muros" for his review. On or about June 8, 2006,

16  Miranda sent Plaintiff an email acknowledging receipt of his copyrighted

17  materials. In the body of the email, Miranda mentioned offering Plaintiff a two

18  year and the terms and conditions of that contract. However, there was no

19  discussion of compensation.

20  19.          After reciving Miranda's email, Plaintiff contacted him to discuss

21  where the contract would be signed. Plaintiff inquired whether the contract would

22  be signed in Florida (Defendant Lideres' office location) or in Los Angeles

23  (Defendant Universal Music's headquarters). Miranda assured Plaintiff that the

24  contract would be forthcoming.

25  20.          Shortly thereafter, Plaintiff telephoned Miranda again. Plaintiff

26  inquired when the contract would be ready. Once again, Miranda assured Plaintiff

27  that he would advise him as soon as the contract was ready. Plaintiff and Miranda

28  continued to maintain telephone contact regarding the status of the contract.

1 | Consistently and repeatedly, Miranda assured Plaintiff that the contract was
2 | forthcoming.
3 | 21.          In August 2006 Plaintiff was in the Bakersfield, California area at a
4 | restaurant. When Plaintiff entered the restaurant, a number of patrons applauded
5 | and commented that they had had just seen the video on television. The restaurant
6 | patrons further advised that the television segment indicated that the "CD was
7 | already available in stores".
8 | 22.          That same date, Plaintiff went to a local Wal-Mart in the bakersfield
9 | area and located his CD on the shelves. Plaintiff talked to the manager of Wal-Mart
10 | and was advised that the CD was sent to the store by Defendant Universal Music.
11 | Plaintiff noted that the CD contained the copyrighted name of Los Mojados Del
12 | Norte as licensed by El Sapito Records. The CD cover also indicated that it was
13 | produced by Defendant Lideres and manufactured and distributed by Defendant
14 | Universal Distribution. Plaintiffs' logo, music and name were used by Defendants,
15 | and each of them, without his knowledge or consent.
16 | 23.          Plaintiff telephoned Miranda to ask about the status of the written
17 | contract. Plaintiff further advised Miranda that he saw his CD in the local Wal-
18 | Mart. Miranda again stated "trust us, the contract is coming". Not being satisfied
19 | with Miranda's response, Plaintiff contacted Defendant Universal Music to obtain
20 | information regarding the written contract. Defendant Universal Music advised
21 | Plaintiff that they "could not give him information" as the transaction came from
22 | Defendant Lideres in Florida.
23 | 24.          After not receiving a satisfactory response from Defendant Universal
24 | Music, Plaintiff contacted Defendant Universal Distribution and spoke to a number
25 | of individuals. Plaintiff advised Universal Distribution that he had just seen his CD
26 | at Wal-Mart. He further advised that he did not sign a written contract which
27 | would give Defendant Lideres, Defendant Universal Music or Defendant Univeral
28 | Distribution permission to use his logo, name or music or distribute his music CD.

1 Plaintiff requested that Defendant Universal Distribution cease and desist use of

2 the video clip. Defendant Universal Distribution indicated that they could not assist

3 Plaintiff and referred Plaintiff back to Miranda at Defendant Lideres' office.

4 25.      Plaintiff also spoke to Juan Carlos Montes ("Montes") an agent and/or

5 representative with Defendant Universal Music. Plaintiff explained to Montes that

6 he did not have a written contract with the Defendant Lideres to use his logo,

7 copyrighted material or music. Montes appeared surprised that Plaintiff did not

8 have any signed contract.

9 26.      In September 2006, Plaintiff even physically went to Defendant

10 Universal Music's office and brought all of his documentary support that he did not

11 sign a contract with Defendant Lideres to use his music or copyrighted materials.

12 No agent, employee or representative from Defendant Universal Music would

13 speak to Plaintiff or review his documentary support that he did not sign a contract

14 with Defendant Lideres. Montes with Defendant Universal Music indicated that

15 they would speak to the upper level executives about Plaintiffs case and would "get

16 back to him". At no time did anyone from Defendant Universal Music contact

17 Plaintiff regarding his case.

18 27.      Upon receiving no response from Defendant Universal Music after a

19 reasonable time period, Plaintiff again telephoned Defendant Universal Music.

20 Defendant Universal Music indicated that they would contact Defendant Lideres

21 and demand that they draft a contract for Plaintiff. Plaintiff also contacted Miranda

22 and demanded a written contract from Defendant Lideres or Plaintiff would file a

23 lawsuit. Miranda indicated that if plaintiff filed a lawsuit against Defendant

24 Lideres, Defendant Lideres would report him to the immigration authorities

25 because he is "illegal" and could be "deported".

26 28.      Shortly thereafter, Defendant Lideres filed Chapter 11 bankruptcy in

27 the State of Florida. After discovering Defendant Lideres filed bankruptcy,

28 Plaintiff again contacted Defendant Univeral Music requesting a written contract.

Defendant Universal Music indicated that they would draft a written contract and "take care of it". At no time did Defendant Universal Music ever produce a written contract for Plaintiff to sign for the use of his logo, copyrighted material and music. For approximately one year, Plaintiff's music CD continued to be sold in stores, such as, Target and Wal-Mart. Additionally, Plaintiff's music CD was sold online with such companies as Amazon.com.

29.      Additionally, after Defendant Lideres' bankruptcy, Plaintiff contacted a number of other record companies seeking a written contract for his already released music CD. The other music companies explained that they could not offer Plaintiff a contract because his music CD had already been released. Plaintiff attempted to explain to the other music companies that he did not give permission to Defendants, and each of them, to release his music CD, however, Plaintiff was unable to obtain a written contract from other music companies.

30.      Plaintiff also contacted a number of radio stations to assist him in releasing his music CD through that medium. The radio station executives refused to deal with Plaintiff as his music CD had already been released through Defendants, and each of them. Therefore, because Defendants, and each of them, used Plaintiff's logo, copyrighted material and music without his permission, Plaintiff cannot obtain work in the music industry.

31.      In late 2006, Plaintiff was in contact with Defendant Universal Music. Again, Universal Music promised to produce a written contract for Plaintiff to sign and "fix the problem" caused by Defendant Lideres in releasing the music CD and using Plaintiffs copyrighted materials without permission. At no time did Defendant Universal Music "fix the problem" and offer Plaintiff a written contract for the music they had already released.

32.      In December 2007, Plaintiff retained the legal representation of Amir S. Salehi ("Salehi"), Esq., of Salehi & Associates. On or about December 21, 2007, Salehi sent a "cease and desist" letter to the Legal Department of Universal Music

1  Group Distribution. Salehi also forwarded the same letter to the legal departments

2  of Defendants Wal-Mart, Univision, and others.

3  33.      At no time after the "cease and desist" letter was sent vy Salehi did

4  defendants, and each of them, compensate Plaintiff or provide Plaintiff with a

5  contract to sell and distribute his copyrighted materials.

6  34.      Plaintiff brings the instant lawsuit.

**First Claim For Releif**

**Direct Copyright Infringement**

**(Against All Defendants)**

10  35.      Plaintiff incorporates Paragraphs 1 through 34 above.

11  36.      Plaintiff is the owner of all right, title and interest to "Tumbando

12  Muros" by "Los Mojados Del Norte".

13  37.      Plaintiff's copyrighted works consist of material original with Plaintiff

14  and are copyrightable material.

15  38.      Defendants, and each of them, have copied, reproduce, distributed,

16  created derivative works of, adapted, and publicly displayed Plaintiff's copyrighted

17  works without the consent or authority of Plaintiff, directly infringing plaintiff's

18  copyrights;

19  39.      Defendants conduct constitutes infringement of Plaintiffs copyrights

20  and exclusive rights under copyright in Plaintiff's copyrighted works in violation of

21  Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§106 and 105.

22  40.      Each instance of infringing conduct by defendants, and each of them,

23  constitutes a seperate and distinct act of infringement of Pkaintiff's copyrights;

24  41.      The acts of infringement by Defendants, and ach of them, have been

25  willful, intentional, and purposeful, in reckless disregard of and with indifference

26  to the rights of Plaintiff.

27  42.      Plaintiff has not received any compensation or advances, as are

28  customary in the music entertainment business, for use of his copyrighted works,

8

1  and has not received any licensing fee from Defendants, and each of them, for use

2  of his copyrighted works.

3  43.        As a direct and proximate result of Defendants' infringements of

4  Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to

5  actual damges and Defendants' profits pursuant to 17 U.S.C. § 504 (b).

6  44.        In the alternative, Plaintiff is entitled to the maximum statutory

7  damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of

8  infringement, or such other amounts as may be proper under 17 U.S.C. § 504(c).

9  45.        Defendants conduct is causing and, unless enjoined and restrained by

10  this Court, will continue to cause Plaintiff great and irreparable injury that cannot

11  be fully compensated by monetary judgement. Plaintiff has no adequate remedy at

12  law. Plaintiff is entitled to injunctive relief prohibiting further infringements of

13  Plaintiff's copyrighted works.

14  **SECOND CLAIM FOR RELEIF**

15  **CONTRIBUTORY COPYRIGHT INFRINGEMENT**

16  **17 U.S.C. §§101, ET SEQ.**

17  **(Against All Defendants)**

18  46.    Plaintiff incorporates paragraphs 1 through 45.

19  47.    Defendants have engaged and continue to engage in the business of

20  knowingly and systematically inducing, causing, or materially contributing to

21  unauthorized reproduction, adaption, public display, or distributionof Plaintiffs

22  copyrighted works by Defendants' advertisers and consumers, and thereby

23  contributing to the direct infringement of Plaintiff's copyrighted works.

24  48.    Defendants' conduct constitutes contributory  infringement of plaintiff's

25  copyrighted works and exclusive rights in copyright in violation of Sections 106

26  and 501 of the Copyright Act. 17 U.S.C. §§ 106, 501.

27  49.    Each infringement of Plaintiff's rights in and to each of Plaintiffs

28  copyrighted works constitutes a seperate and distinct act of infringement;

50.   The acts of infringement by Defendants, and each of them, have been willful, intentional, and purposeful, in reckless disregard and indifference to Plaintiff's rights.

51.   As a direct and proximate result of Defendants', and each of their, infringements of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to actual damages and Defendants' profits pursuant to 17 U.S.C. §504(b).

52.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated by monetary judgement. Plaintiff has no adequate remedy at law. Plaintiff is entitled to injunctive releif prohibiting further infringements of Plaintiff's copyrighted works.

**THIRD CLAIM FOR RELIEF**

**VICARIOUS COPYRIGHT INFRINGEMENT**

**17 U.S.C. §§ 101, ET SEQ.**

**(Against all Defendants)**

53.   Plaintiff incorporates paragraphs 1 through 52 above.

54.   Defendants, and each of them, had the right and ability to supervise or control the infringing conduct of the other Defendants, including by terminating such reproduction for and distribution to other Defendants, but have refused and failed to exercise such supervision and/or control. As a direct and proximate result of such refusal and failure, Defendants and their advertisers and consumers have infringed Plaintiff's copyrighted works, as set forth above. Defendants have derived a direct financial benefit from this infringing conduct.

55.   Defendants' conduct constitues vicarious infringement of Plaintiffs copyrighted works constitutes a seperate and exclusive rights in copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

56.   Each infringement of Plaintiff's rights in and to each of Plaintiff's copyrighted works constitutes a separate and distinct act of infringement.

57.   The acts of infringment by Defendants have been willful, intentional, and purposeful, in reckless disregard and indifference to Plaintiff's rights.

58.   As a direct and proximate result of Defendants' infringements of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

59.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated by monetary judgement. Plaintiff has no adequate remedy at law. Plaintiff is entitled to injunctive relief prohibiting further infringements of Plaintiffs copyrighted works.

WHEREFORE, Plaintiff prays for judgement against all Defendants as follows:

1.       That Defendants, and each of them, and their officers, agents, servants, employees, representatives, successors, and assigns, and all persons in active concert or participation with them, be enjoined from copying, reproducing, distributing, adapting, or publicly displaying Plaintiff's copyrighted works, violating Plaintiff's Right to Publicity, and inducing, causing, materially contributing to, and profiting from the foregoing acts committed by others.

2.       That Defendants, and each of them, be ordered to destroy all items, electronic or otherwise, in their possession, custody, or control, that infringe the copyrights or rights of publicity of plaintiff;

3.       Restitution in the amount of the benefit to Defendants by reason of their unlawful conduct

4.       Defendants' actual profits;

5.       Plaintiffs' actual damages;

6.       Statutory damages under the Copyright Act;

11

7.      Full cost of this suit;

8.      Prejudgement interest; and

9.      For such further relief as this Court deems appropriate

Dated:      April 14, 2010      Rene Carranza

                                By: _____

                                Rene Carranza

                                Plaintiff in Pro Per


**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial in this action.

Dated:      April 14, 2010      Rene Carranza

                                By: _____

                                Rene Carranza

                                Plaintiff in Pro Per

12